**Dale H. ALBER and Jane A. Alber, Appellants (Third-Party Defendants and Counterclaimants Below);**

**v.**

**STANDARD HEATING AND AIR CONDITIONING, INC., and Ronald Mitchell, Appellees (Defendants and Third-Party Plaintiffs Below),**

**v.**

**H.B. SHANK & SONS, INC., (Plaintiff Below).**

No. 3–1083A335.

Court of Appeals of Indiana, Third District.

April 9, 1985.

Gary M. Cappelli, J. Michael Loomis, Cappelli and Loomis, Fort Wayne, for appellants.

T. Dean Swihart, Grotrian & Boxberger, Fort Wayne, for appellees.

HOFFMAN, Judge.

On July 8, 1968, appellant Dale Alber purchased a heating and air-conditioning business from the H.B. Shank family. As condition to the purchase agreement, Alber was permitted to use the trade name H.B. Shank & Sons, Inc. for a period of six years. Without permission, Alber continued to use this trade name after his con-

tractual right expired. In 1975, Alber sold out to appellee Ronald Mitchell and warranted unlimited use of the H.B. Shank & Sons, Inc., trade name.

In 1977, Mitchell was contacted by the Shank family attorney and advised that he could no longer use the family trade name. Alber intervened, insuring Mitchell continued use of the trade name while promising the Shanks that he would clear matters up. In September of 1981, the Shanks sued Mitchell to prohibit further use of their trade name. Mitchell joined Alber as a third-party defendant, alleging breach of contract. The trial court entered the following judgment:

"... [T]he defendant, Standard Heating and Air Conditioning, Inc., and the defendant, Ronald Mitchell a/k/a Ronald J. Mitchell, shall forthwith cease forever using the name 'H.B. Shank & Sons, Inc.' or 'H.B. Shank & Sons, Inc. of Indiana';

... [T]he plaintiff, H.B. Shank & Sons, Inc., shall recover no damages from the defendant, Standard Heating and Air Conditioning, Inc. or the defendant, Ronald Mitchell a/k/a Ronald J. Mitchell;

... [T]he corporate name 'Standard-Shank Heating and Air Conditioning, Inc.' is not a 'name similar' to the plaintiff's name; and said corporation may continue to use said name without interference from the plaintiff, H.B. Shank & Sons, Inc.;

... [T]he defendant, Ronald Mitchell a/k/a Ronald J. Mitchell, shall recover no judgment against the third-party defendants and counter-claimants, Dale H. Alber and Jane A. Alber, on his third-party complaint;

... [T]he third-party defendants and counterclaimants, Dale H. Alber and Jane A. Alber, shall take nothing further from the defendant, Ronald Mitchell a/k/a Ronald J. Mitchell, under the terms and provisions of the Stock Purchase And Sale Agreement dated June 12, 1975; and said third-party defendants and counter-claimants, Dale H. Alber and Jane A. Alber, shall furnish all necessary

certificates and documents to complete the purchase by the defendant, Ronald Mitchell a/k/a Ronald J. Mitchell, under the Stock Purchase And Sale Agreement, with all of said documents to be so transferred within 60 days from the date of this judgment;

Court costs shall be taxed to the third-party defendants and counter-claimants, Dale H. Alber and Jane A. Alber; however, said third-party defendants and counter-claimants shall be credited with all costs paid to date."

Alber appeals this judgment.[1]

Alber first contends the trial court erred in refusing to bar the Shank's suit under the doctrine of laches. He specifically maintains the Shanks waited for an inexcusable period of time before asserting any right to their trade name.

The doctrine of laches is based upon the legal maxim, equity aids the vigilant, not those who slumber on their rights. The defense of laches is a determination which rests within the sound discretion of the trial court and will be reversed on appeal only in the event of a clear abuse of discretion. *Hall et al. v. Dept. State Revenue et al.* (1976), 170 Ind.App. 77, 351 N.E.2d 35. The following three elements comprise the defense of laches:

1) inexcusable delay in asserting a right;

2) implied waiver arising from knowing acquiescence in existing conditions; and

3) circumstances causing prejudice to the adverse party.

*Bryant v. State ex rel. Van Natta* (1980), Ind.App., 405 N.E.2d 583; *State ex rel. Crooke et al. v. Lugar et al.* (1976), 171 Ind.App. 60, 354 N.E.2d 755.

The evidence most favorable to the judgment does not indicate an abuse of discretion. Alber's license to use the trade name ran until July of 1974. In 1975 he conveyed the business to Mitchell with a warranty that the trade name was free to use. The Shanks assumed Alber ceased using the name in 1974, and first became aware

---

**1.** Plaintiff H.B. Shank & Sons, Inc., is not a party to this appeal.

that he had not in 1977. They took immediate action to prevent further use when Alber convinced them he would resolve this matter with Mitchell. In 1981 the Shanks again discovered illegal use of their name and promptly sued Mitchell. Under these circumstances, the Shanks' delay is neither unreasonable, nor does it imply acquiescence from which waiver arises. The trial court properly refused to bar this suit under the doctrine of laches.

■■■■ Alber also contends that the trial court erred in finding the doctrine of equitable estoppel inapplicable to the operative facts of this case. More specifically, he maintains the Shanks gave him permission to use their name after their contract expired.

Equitable estoppel arises when:
1) a false representation or concealment of material fact is made with actual or constructive knowledge of the truth;
2) the representation is made to one who is without knowledge or scienter, with the intent that he or she will rely upon it; and
3) the second party relies upon the falsehood to his or her detriment.

*Coghill v. Badger* (1981), Ind.App., 418 N.E.2d 1201. In contrast to laches, which involves injury due to non-action, estoppel is associated with positive conduct which misleads another person.

Alber's claim that the Shanks are estopped from prohibiting the use of their trade name is not substantiated by the record. Tom Shank testified that he "never gave any approval for use of the name." Although Alber's argument is supported by his own testimony, this Court is prohibited from accepting his invitation to reweigh the facts and credibility of witnesses. The testimony of Tom Shank is sufficient to support the finding of the trial court.

In reference to Alber's preceding arguments based upon principles of equity, an independent basis exists to affirm the judgment. It is universally accepted that he who seeks equity, must do equity. *Sicanoff v. Miller et al.* (1960), 131 Ind.App.

535, 167 N.E.2d 481. A party petitioning for equitable relief must come before the court with clean hands. *Ferguson v. Boyd* (1907), 169 Ind. 537, 81 N.E. 71. Alber was well aware of the contractual restriction on the use of the trade name but continued to use it after the right expired. He later warranted unlimited use of this name to Mitchell. When Mitchell and the Shanks learned that the name was being improperly used, Alber convinced both sides that he would resolve the problem most favorable to their interests. These actions constitute a substantial misrepresentation of the truth tantamount to actual or constructive fraud. Alber is in no position to request equitable relief.

■■■■ Alber next contends the trial court erred in finding a failure of consideration with relation to his contract with Mitchell. The trial court ordered Alber to transfer all necessary documentation to complete the transaction, while relieving Mitchell from further payment obligations.

Consideration is an essential element of every contract. *Puetz et al. v. Cozmas et al.* (1958), 237 Ind. 500, 147 N.E.2d 227. There is a failure of consideration when a party to a contract fails to perform those acts promised. *See, Jessup v. Trout* (1881), 77 Ind. 194; 6 I.L.E. *Contracts* § 40 (1958). There may be a partial failure of consideration if part of the promised performance is not delivered. If the undelivered consideration is allocable to an independent covenant by the other party, the contract may be avoided on a *pro tanto* basis. *See, Beal v. Beal* (1881), 79 Ind. 280; *Gamble v. Grimes* (1850), 2 Ind. 392; 6 I.L.E. *Contracts* § 40 (1958).

In ordering the purchase agreement completed while relieving Mitchell from further payment on the contract, the trial court recognized a partial failure of consideration. Alber did not deliver to Mitchell the trade name and goodwill as promised under the contract. The trial court did not err in finding a partial failure of consideration.

■■■■ Alber finally contends the trial court's damage award is not supported by

the evidence. Generally, a breaching party is liable for all injuries proximately resulting from his wrongful acts. *Rondinelli v. Bowden* (1973), 155 Ind.App. 582, 293 N.E.2d 812. In cases where damages are not subject to precise mathematical calculation, an award which is within the scope of evidence should be sustained on appeal. *Indiana Bell Tel. Co., Inc. v. O'Bryan* (1980), Ind.App., 408 N.E.2d 178.

In the case at bar, evidence was presented which indicated that loss of the Shank trade name would cost Mitchell $50,000.00, allocable to lost profits and goodwill, changes in advertising, and eradication of the name from all present equipment, letterheads, and decals. The trial court essentially awarded Mitchell $17,000.00 by relieving him from remaining payment obligations to Alber. This award is certainly within the scope of evidence.

The judgment of the trial court is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.