**James REGNANTE, Appellant–Plaintiff,**

v.

**INDIANA DEPARTMENT OF REVENUE, Appellee–Defendant.**

**No. 49A04–9703–CV–104.**

Court of Appeals of Indiana.

Jan. 23, 1998.

Publication Ordered Feb. 25, 1998.

David M. Henn, Cohen & Morelock, Indianapolis, for Appellant–Plaintiff.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee–Defendant.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

James Regnante appeals the trial court's order on his action against the Indiana Department of Revenue. We affirm.

## ISSUES

1. Whether the trial court erred in denying Regnante's motion to disqualify the trial judge.

2. Whether the trial court erred in granting the Department of Revenue's motion for summary judgment.

## FACTS

James Regnante worked for the Indiana Department of Revenue ("the Department") in New York state. He resigned on April 20, 1990, as an alternative to being fired for unsatisfactory work performance. Regnante sought a hearing before the State Employees Appeals Commission. The Commission informed him that as an employee of the Department he had no appeal rights under Ind. Code § 4–15–2–35 or the Official Merit Rules of the Indiana State Personnel Department, and further that the Department was exempt from the provisions of the career bipartisan act. When Regnante continued to correspond, the Commission finally entered an order finding any grievance that Regnante might have been able to file had not been timely filed, and the Commission was, therefore, without jurisdiction.

On February 11, 1991, Regnante initiated the instant action, which after two years and two amendments claimed that as a career bipartisan employee he was entitled to an appeal of his "constructive discharge," (R. 266), that he had been improperly denied the appeal procedure of I.C. § 4–15–2–35, and that he had been denied due course of law under the Indiana Constitution. In April of 1993, the matter was stayed while Regnante pursued an action filed in federal court in New York against certain individuals employed by the Department.

In September of 1996, the trial court scheduled a final pretrial conference on December 6, 1996. On October 23, 1996, Regnante moved for summary judgment. The trial court scheduled a summary judgment hearing for December 5, 1996, and denied Regnante's subsequent request that the hearing be rescheduled. The Department renewed its pending motion for summary judgment and opposed Regnante's motion. On November 25, 1996, Regnante moved that the trial court judge be disqualified based on his belief that the judge was biased against him because he was acting *pro se* and was a New York resident, and because he had filed a lawsuit against the judge in U.S. District Court for the Eastern District of New York. A hearing on the disqualification motion was scheduled for January 2, 1997.

The trial court conducted a hearing on the summary judgment motions on December 5, 1996. Regnante failed to attend that hearing and failed to appear for either the final pretrial conference or the hearing on his motion to disqualify the trial court judge.

On January 9, 1997, the trial court granted summary judgment to the Department and "in the alternative," dismissed the complaint "under Trial Rule 16 and 41(E)" for failure to appear "when ordered to do so on three occasions." (R. 643). The trial court also denied Regnante's motion to remove and disqualify the trial court judge.

## DECISION

### 1. Motion to Disqualify

■ In ruling on Regnante's motion to disqualify, the trial court cited *Matter of Appointment of a Special Judge in the Wabash Circuit Court*, 500 N.E.2d 751 (Ind. 1986). In that case, our supreme court considered whether every legal action filed against the trial judge necessarily triggered the requirement under the trial rules that the judge disqualify himself immediately. In *Wabash Circuit Court*, a party had "engaged in a pattern of conduct the purpose of which [wa]s to stultify the judicial power." *Id.* at 752. The court found "constitutionally intolerable" the possibility that the "filing of specious claims" would insulate a litigant "from judicial authority." *Id.* Therefore, in such a case, our supreme court directed the trial judge to hold a summary proceeding to determine whether the claim presented a reasonable basis for disqualification. *Id.*

■ Regnante claims the trial court erred in denying his motion because a reasonable basis supported his motion, specifically certain rulings by the court which denied his motions and granted those of the Department. However, rulings unfavorable to a party do not establish the "actual personal

bias" necessary for the grant of a change of judge motion. *Matter of Adoption of L.C.,* 650 N.E.2d 726, 734 (Ind.Ct.App.1995), *trans. denied, cert. denied; Newman v. Worcester County Dept. of Social Services,* 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547.

Regnante further contends that the trial court judge cannot consider the merits of the allegation of bias. This argument fails to acknowledge the clear import of *Wabash Circuit Court.* As quoted in his own brief, the trial court was directed to conduct a summary hearing on the question of whether the claim "presents a reasonable basis for disqualification," and if not, "the court should not disqualify." Regnante's Brief at 7, quoting 500 N.E.2d at 753. The trial court made 17 specific findings regarding Regnante's motion to disqualify; each of the bases claimed in Regnante's federal lawsuit was addressed and found without merit. The trial court concluded Regnante "filed the federal lawsuit in an attempt to obtain a change of judge, which he could not receive under the Trial Rules," and, consequently, "no reasonable basis exists for disqualification." (R. 643).

The trial court's action in denying Regnante's motion to disqualify comports with *Wabash Circuit Court.* Its conclusion that no reasonable basis supported the motion was not erroneous, and its denial of the motion was not improper.

### 2. *Summary Judgment*

■ Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind.Ct.App.1994). Once the movant meets these two requirements, the burden shifts to the non-moving party to set forth specifically designated facts showing the existence of a genuine issue. *Id.*

The State Personnel Act does not cover employees of the Department. Ind.Code § 4–15–2–3.8. Department employees are "non-merit service" employees. I.A.C. 31–1–1–1.

The Department was included in the career bipartisan personnel system established at Ind.Code 4–15–2.5–1 *et seq.* However, Ind.Code § 4–15–2.5–22 provides that an entire agency may be exempted from the system as follows:

> The administrative head of any state [agency] may submit a request to the personnel director to have his entire agency or any part [thereof] exempt from the provisions of this chapter. Upon the approval of the personnel board and the governor any state agency or any part thereof may be exempt from the provisions of this chapter.

■ According to the designated material submitted by the Department, on January 8, 1973, the administrative head of the Department submitted a request "to have the entire Department of Revenue exempt" from the career bipartisan personnel system. (R. 86). A handwritten notation on the request indicates Governor Bowen's approval on January 9, 1973.[1] Minutes of the January 9, 1973, State Personnel Board indicate the Board's approval of the request.

Regnante submitted the affidavit and opinion of a handwriting expert that the notation indicating the governor's approval was not written by Governor Bowen. In response, the Department submitted the affidavit of William C. Lloyd, executive assistant to Governor Bowen in 1973. Lloyd averred he had "approved the requested exemption[ ] in [his] capacity as agent for Governor" Bowen and made the approval notation "to indicate Governor Bowen's approval" of the exemption request. (R. 244). Regnante argues that Lloyd's "testimony that Governor Bowen approved" the exemption request is inadmissible hearsay and cannot, therefore, serve as evidence sufficient to demonstrate that no genuine issue of material fact exists. Regnante's Brief at 20. He then contends the

---

1. The request letter, upon which the approval notation appears, is a certified copy of the original on file with the Indiana Commission on Public Records.

Department "must conclusively demonstrate that the Governor signed the exclusion." *Id.* at 23.

Regnante's assertion about inadmissible hearsay in the Lloyd affidavit mischaracterizes its effect on the issue at hand. What the affidavit evidences is the propriety of the notation affixed to the request for the exemption. The critical material fact is not whether Governor Bowen signed the request for approval but whether he *approved* the request. As the Department correctly notes, Regnante's invocation of the constitutional requirement that the governor sign all bills before they become law does not similarly mandate that the governor *sign* a particular document to make the exemption of the Department from the career bipartisan personnel system effective. The statute providing for the exemption does not specify a method whereby gubernatorial approval must be evidenced. The notation on the request letter is evidence that Governor Bowen approved the request. Correspondence to Regnante from the State Employees Appeals Commission referenced the 1973 exemption, further evidence of the approval. Regnante has come forward with no designated evidentiary matter showing that the exemption was not approved by the governor. *See* T.R. 56. Accordingly, the trial court did not err in granting the Department summary judgment on its being exempt from the career bipartisan personnel system.[2]

We affirm.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.

#### *ORDER*

This Court having heretofore handed down its opinion in this appeal on January 23, 1998, marked "MEMORANDUM DECISION NOT FOR PUBLICATION"; and

Comes now the appellee, by counsel, and files herein its Motion to Publish, alleging therein that publication would be appropriate because the opinion establishes or clarifies a rule of law and because the opinion involves a legal issue of public importance, which said

motion is more particularly in the following words and figures, to-wit:

#### (H. I.)

And the Court, having examined said motion, having reviewed its opinion heretofore handed down in this cause and being duly advised, now finds that the appellee's Motion to Publish should be granted and that this Court's opinion in this appeal should be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The appellee's Motion to Publish opinion is granted and this Court's opinion heretofore handed down in this cause on January 23, 1998, marked MEMORANDUM DECISION, NOT FOR PUBLICATION is now ordered published.

---

2. Regnante also claimed as a separate issue that the trial court erred in dismissing his action for failure to appear and to comply with court orders. Because we affirm the trial court's grant

of summary judgment to the Department, we do not reach Regnante's claim that the trial court's alternative dismissal of his action was erroneous.